Irving Lang, J.
In this motion to vacate a judgment of conviction pursuant to CPL 440.10 (subd 1, par [h]), the defendant contends that this court lost personal jurisdiction over the defendant under the Interstate Agreement on Detainers (agreement) as a matter of Federal law.
A brief review of the salient events in the history of this case is in order.
The defendant was indicted on February 10, 1972, for the crime of murder (Penal Law, § 125.25) and various other felonies. On January 11, 1974, the defendant was sentenced on tax charges in Federal court to a four-year term of imprisonment and was committed to the Federal detention facility at 427 West Street in New York City. A writ of habeas corpus id prosequendum was issued by this court on January 17, 1974. The defendant appeared, pursuant to the writ, on January 18 and 25 and February 8, 1974. On each occasion the People were ready to proceed to trial but defense counsel was actually engaged in another State, and the defendant was returned to the Federal authorities. On February 14, 1974, the defendant appeared and pleaded guilty to the crime of manslaughter in the first degree. Sentencing was set for March 14, 1974, and the writ was indorsed accordingly. On March 14, 1974, the defendant was sentenced to an indeterminate term of imprisonment with a maximum of eight years, to run concurrently with his Federal sentence. The defendant was paroled by the Federal authorities on June 13, 1975, and commenced service of his State sentence. Pursuant to a motion to vacate sentence, the defendant was resentenced on August 14, 1975, on consent of the District Attorney, to an indeterminate term of imprisonment with a maximum of six years, in order to credit him with time served on the Federal sentence. On July 22, 1976, the defendant moved to vacate his conviction on the ground that the repeated transfer between Federal and State custody had divested this court of jurisdiction (CPL 580.20, Agreement on Detainers, article IV, par [e]) as a matter of State law. The motion was denied (cf. People v Engelson, 55 AD2d 960, mot for lv to app den 41 NY2d 1013; People v White, 33 AD2d 217; People v Valenti, 90 Misc 2d 904; *292 People v Bernstein, 74 Misc 2d 714). A motion for leave to appeal to the Appellate Division was denied on October 26, 1976, per Capozzoli, J.
The defendant then commenced a Federal habeas corpus proceeding on the same allegation of loss of jurisdiction pursuant to the agreement. The petition was dismissed on the grounds that the claimed violation of State law was not cognizable in a Federal habeas corpus proceeding and the claimed violation of the Federal law and Constitution had never been raised in the State courts.
The defendant has accordingly moved again in this court to vacate his conviction on the ground that the agreement (art IV, subd [e]) divested this court of jurisdiction as a matter of Federal law.
While this court is not entirely convinced by the rationale of Federal decisions which have held that the agreement always involves a question of Federal law (see United States ex rel. Esola v Groomes, 520 F2d 830; United States v Mauro, 544 F2d 588, for purposes of this motion the court will assume that Federal law, not State law, controls (cf. Dyer v Sims, 341 US 22).
The statute in question, paragraph (e) of article IV of the Agreement on Detainers (CPL 580.20, art IV, par [e]; 84 US Stat 1400, § 2, art IV, par [e]), to which the Federal Government is a party, reads as follows:
"If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner’s being returned to the original place of imprisonment pursuant to Article V (e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the sanie with prejudice.”
Therefore, the apparent sanction for returning a prisoner obtained pursuant to the agreement, without trial, is dismissal of the accusatory instrument and a concomitant loss of jurisdiction. It is uncontested that defendant Squitieri, while a sentenced Federal prisoner, was produced in State court and returned to Federal custody prior to his plea of guilty. Nonetheless, this court finds that he is not entitled to a vacatur of his conviction.
A basic point of departure is the method used to obtain Squitieri’s appearance in this court. The District Attorney utilized a writ of habeas corpus ad prosequendum (CPL 580.30, *293 subd 2), rather than the Agreement on Detainers (CPL 580.20).
The question as to whether a writ of habeas corpus ad prosequendum is a "detainer” within the meaning of the Agreement on Detainers has created a sharp controversy in the Federal courts (cf. United States ex rel. Esola v Groomes, supra, and United States v Mauro, supra, p 591, with United States v Scallion, 548 F2d 1168, p 1173, and United States v Mauro, supra, p 595 [Mansfield, J., dissenting]). This court finds persuasive the holding that the writ and the agreement are separate and distinct methods of obtaining the appearance of a Federal prisoner. Indeed the statutory scheme itself draws a dichotomy between the two (cf. CPL 580.20, 580.30).
The agreement was enacted with the dual purpose of affording both prosecutors and defendants with a method of obtaining a speedy disposition of outstanding detainers (cf. United States v Ford, 550 F2d 732, 737). The writ of habeas corpus ad prosequendum on the other hand demands immediate production of the prisoner for judicial proceedings (cf. United States v Mauro, supra [Mansfield, J., dissenting]). The writ is, therefore, a procedural device used by a prosecutor who is actively seeking a disposition of pending criminal charges, not merely attempting to hold the defendant for some future date. To apply the sanction provisions of the agreement (art IV), to the writ, in this situation, does nothing to further the purposes of the agreement.
Even assuming that the writ was in fact a "detainer” for purposes of invoking the article IV (par [e]) sanction, there are multiple reasons why the sanction should not be applied in the instant case.
On all the occasions in question when this defendant was produced pursuant to the writ, he was brought to this court by Federal officers. The defendant was not surrendered to State custody but remained in the courtroom until his case was called and then returned to the Federal detention facility with the officers. It is abundantly clear that the State must obtain custody of a defendant before it can return him to Federal custody. In this case the chain of Federal custody was never broken and paragraph (e) of article IV is inapplicable.
This minimal intrusion on Federal custody leads logically to the second reason for denying the relief sought. The Second Circuit Court of Appeals has squarely held that where a prisoner is produced pursuant to the Agreement on Detainers *294 for a brief court appearance and immediately returned to the original place of imprisonment, the article IV (par [e]) sanction does not apply (United States v Chico, 558 F2d 1047).
It is uncontested by the defendant that the three appearances which he made in this court prior to plea were necessitated by his counsel’s actual engagement in another State and not by the prosecution. Paragraph (a) of article VI of the agreement (CPL 580.20), expressly provides that the time periods "provided in Articles III and IV of this agreement * * * shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.” The court finds that this provision applies to the return provisions of paragraph (e) of article IV. A contrary holding would clearly frustrate the purposes of the agreement. If this court were required to maintain custody of this defendant while he was admittedly unprepared to stand trial, then the very interruption of sentence which the agreement seeks to eliminate would be exacerbated (cf. United States v Mauro, supra, p 592; United States v Ford, supra, p 737).
Two further points remain to be made. This defendant, assuming that paragraph (e) of article IV of the agreement was violated, has waived his right to assert that violation both by his conduct and by his plea of guilty.
The defendant has not contested the People’s allegation that he expressed a desire to be returned to Federal custody (an election this court cannot gainsay in light of the relative comfort and convenience of the Federal facility vis-á-vis Hikers Island). In fact, the minutes of the adjournment of February 8, 1974, clearly reflect that the defendant wished to remain at the Federal facility in order to have a "contact” visit with his family. The defendant contends that this expression of a preference does not constitute a knowing and intelligent waiver of a known right, but the Federal courts have ruled to the contrary (see United States v Ford, supra, p 742; United States v Scallion, 548 F2d 1168, 1170). While the court has no difficulty in finding a voluntary waiver under the facts of this case, the theory of estoppel proposed in the Scallion case seems more appropriate where a defendant makes a request and receives the benefit of the court’s acceding to it.
Lastly, this defendant pleaded guilty and was sentenced in this court without ever raising the issue of loss of jurisdiction. This failure to raise what is basically a statutory right acts as *295 a bar to its being raised in a post conviction application (United States v Ford, supra; People v White, 33 AD2d 217).
Even alleged Federal constitutional violations may not generally be considered after a guilty plea.
"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.” (Tollett v Henderson, 411 US 258, 267.)
Accordingly, it is evident that Federal law does not constrain this court to entertain, after a plea of guilty, the claim that "Federal” statutory law (the Interstate Agreement on Detainers Act; 84 US Stat 1397-1403) was violated in the course of the criminal proceedings against Squitieri.
Nor does State law provide for review of such a claim after a guilty plea. The Court of Appeals has stated that:
"A plea of guilty 'is more than a confession which admits that the accused did various acts; it is itself a conviction [and] nothing [else] remains but to give judgment and determine punishment’ * * * Evidencing, as it often does, a certain trial strategy, it bespeaks of the defendant’s intention not to litigate the question of his guilt, and necessarily involves the surrender of certain constitutional rights, including the right to confrontation, the privilege against self incrimination and the right to trial by jury”. (People v Lynn, 28 NY2d 196, 201-202.)
Furthermore, "in the plea situation the defendant tacitly indicates that no further judicial inquiry is required” (People v Lynn, supra, p 202) and "pleading guilty * * * evinces, prima facie, an intention to forego appellate review”. (People v Melton, 35 NY2d 327, 329.)
It is also clear that a violation of the Interstate Agreement on Detainers Act, even if established, is not a jurisdictional defect which may survive a guilty plea (see People v Lawrence, 39 NY2d 956, 958; People v Melton, supra, p 329 and n 2; People v Lynn, supra, 201-202). The Interstate Agreement on Detainers Act is not self-executing, and a violation may be waived (see People v White, 33 AD2d 217; United States v Ford, supra).
Federal courts have also recognized the limited scope of *296 review when nonconstitutional claims are raised for the first time in a postconviction motion (Alfano v United States, 555 F2d 1128).
In short, guilty pleas, absent fraud, issues specifically reserved for appeal, or overriding considerations of justice, should terminate litigation and not serve as a springboard for collateral attacks unrelated to the guilt or innocence of the accused.
For all the foregoing reasons the motion is denied in all respects.