[Crim. No. 11614. Fourth Dist., Div. One. Jan. 20, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS J. CELLA, JR., Defendant and Appellant.

COUNSEL

Monroe & Riddet and Keith C. Monroe for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, John W. Carney and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—Louis J. Cella, Jr., appeals the judgment after pleading guilty to seven counts of grand theft (Pen. Code, §§ 484, 487)[1] and three counts of presenting false claims (§ 72). The remaining 117 counts were dismissed. He challenges the denial of his motions to re-open the suppression, section 1538.5, proceedings and to dismiss pursuant to article IV, subdivision (e), of the Interstate Agreement on Detainers (§ 1389). We conclude the trial court correctly denied his motion to dismiss, but erred in depriving him a further hearing to permit a full and complete determination of the merits of his section 1538.5 motion. Accordingly, we reverse the judgment and remand to the trial court with directions.

*Factual and procedural background*[2]

This is Cella's second appeal to this court. In his first appeal, taken after the trial court denied his motion to suppress evidence (§ 1538.5), we reversed the judgment (*People v. Cella* (Mar. 28, 1979) 4 Crim. 8913) holding the original search and seizure on August 4, 1975, to be unlawful and remanded with directions to the trial court. The People's petition for hearing to the Supreme Court was denied on June 14, 1979,

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]See *United States v. Cella* (9th Cir. 1977) 568 F.2d 1266, 1270-1277, for an extensive summary of the facts underlying defendant's 127-count indictment.

" . . . without prejudice to appropriate further proceedings in the superior court on the question whether or not all or part of the evidence against defendant was tainted by the search of August 4, 1975. [¶] Bird, C. J., Mosk, J., and Newman, J., do not agree with the order denying a hearing without prejudice."

On July 5, 1979, Cella's guilty plea was set aside and the indictment was reinstated. The next day, a telephonic abstract of the arrest warrant, issued on July 5, 1979, was sent to the Federal Correctional Institute at Lompoc, requesting Cella be held pursuant to the abstract and notification. On July 8, 1979, Cella mailed a request for trial pursuant to section 1381.5 to the trial court with a copy to the district attorney. The district attorney wrote the warden at the Federal Correctional Institute at Lompoc on July 19, 1979, inquiring whether or when Cella could be released for trial in accord with section 1381.5. On the next day, the trial judge wrote a letter to the district attorney acknowledging receipt of Cella's request on July 9, 1979, noting his own review of section 1381.5, and stating it was the People's responsibility to make prompt inquiry with the federal authorities so that a trial date could be fixed. Hearing nothing from the federal authorities, the People applied, and the trial court issued on September 13, 1979, a writ of habeas corpus *ad prosequedum* addressed to the warden of the Federal Correctional Institute at Lompoc commanding him to produce Cella before the trial court on September 27, 1979.

Cella appeared in court on September 27, 1979. Over defense objection, the trial court recalled the bench warrant of July 5, and released Cella on his own recognizance to be held in federal custody. Cella then waived his right to appearance at the pretrial proceedings and his statutory right for time of trial, therefore waiving his right to a speedy trial. A readiness conference was set for November 13, and the trial was scheduled for November 26, 1979. He was apparently then held in the Federal Metropolitan Correctional Center in San Diego until October 2, 1979, when he was returned to the federal facility at Lompoc.

On November 8, 1979, Cella filed a "Memorandum re Further Appropriate Proceedings And Notice Thereof" with the trial court with the intent of notifying all interested parties of his intent " . . . to undertake further proceedings pursuant to Penal Code section 1538.5 relative to all searches and all seizures involved in this case other than that of August 4, 1975." On November 13, 1979, the trial court told Cella to notice a hearing on whether further suppression proceedings could be

undertaken and suggested he move for a continuance of the trial date. Two days later, Cella filed the cited notice as well as his motion to suppress. On November 20, 1979, the court denied what had become Cella's motion to determine whether he would be permitted to make a motion to suppress evidence on the grounds the motion to suppress was not timely made and it had been once heard.

Cella's motion to dismiss the indictment pursuant to the Interstate Agreement on Detainers (the Agreement) was also denied. On November 30, 1979, Cella entered his plea and obtained a certificate of probable cause regarding the contested issues. (§ 1237.5.)

I

Cella claims he was never afforded a full and fair suppression hearing after his appeal in which the search and seizure of August 4, 1975, was found to be unlawful. ██ ██ ██ ██ He says the trial court was required to reopen proceedings to examine the legality of numerous other searches and seizures.[3]

After this case was remanded to the trial court, defense counsel was understandably in an apparent quandary as to how he should proceed with his motion to suppress. He had always argued the illegal search and seizure of August 4, 1975, was the "keystone" search and had tainted all the other evidence seized in later searches. In his first appeal he limited his argument to this search and we only addressed the illegality of that search. In denying the petition for hearing, it appears a majority of the Supreme Court wished to furnish guidance on what should occur on remand, because its order expressly provided it was "without prejudice to appropriate further proceedings in the superior court on the question whether ... all or part of the evidence against defendant was tainted by the search of August 4, 1975." Thus Cella's memorandum of November 8, 1979, pertaining to "...further proceedings pursuant to Penal Code section 1538.5 relative to all searches and all seizures in-

---

[3]The People urge this contention is not cognizable upon this appeal, because it is not reviewable under section 1237.5, subdivision (a), for the reason it does not involve constitutional, jurisdictional or other considerations going to the legality of the proceedings. Although in retrospect it would have been simpler had Cella merely noticed his motion to suppress timely upon remand to the trial court without pursuing what became a "hybrid" motion, a motion to hear the motion to suppress, we nevertheless conclude the matter is properly before us under section 1237.5, subdivision (a), as "going to the legality of the proceedings" because Cella was improperly denied a complete hearing on his motion to suppress.

volved in this case other than that of August 4, 1975," was a natural outgrowth of the rather unique procedural posture of this case following appellate review. At a hearing on November 13, 1979, he told the trial court he was seeking the resolution of the question of whether he was entitled to further suppression proceedings, which was ultimately denied on the grounds previously noted.

The enactment of section 1538.5 with its comprehensive and exclusive pretrial procedures to determine search and seizure issues was a legislative response to the unnecessary and costly expenditure of time and effort in allowing defendants to repeatedly challenge the legality of a search or seizure while reserving to the prosecution the right to obtain appellate review of an adverse decision. (See *People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 98 P.2d 473].) ■ "[D]etermination of a 1538.5 motion at a special hearing in the superior court—whether in the defendant's or in the People's favor—deprives that court of jurisdiction to reconsider the matter unless the People, pursuant to subdivision (j), seek to reopen the matter *at trial* upon a showing of good cause." (*Madril* v. *Superior Court* (1975) 15 Cal.3d 73, 77-78 [123 Cal.Rptr. 465, 539 P.2d 33].) "'Under [section 1538.5] a defendant is entitled to make only one pretrial motion to suppress evidence in the superior court .... He is not entitled to a second hearing on the motion prior to trial.'" (*Id.*, at p. 77, quoting *People* v. *Superior Court* (*Green*) (1970) 10 Cal.App.3d 477, 481 [89 Cal.Rptr. 223].)

■ We must inquire whether Cella merely seeks to relitigate matters upon which the court has previously ruled or whether further hearing is essential to the full and complete hearing to which he is entitled, including his right to have the court rule on the legality of other searches and seizures which the court in light of its findings may have thought were unnecessary to rule upon. (*People* v. *Brooks* (1980) 26 Cal.3d 471, 480-481 [162 Cal.Rptr. 177, 605 P.2d 1306].) For example, a court may deem it appropriate for reasons of judicial economy to bifurcate a suppression hearing and in a brief hearing rule on only a single ground presented rather than conducting a lengthy hearing and ruling on several grounds, all of which but one become superfluous. Where such occurs and "defendant's motion [is granted] on the first ground presented, [but] is subsequently reversed on appeal, the reviewing court should remand to the trial court for disposition of the alternate grounds for suppression." (*Id.*, at p. 483.) Under such circumstances the superior court does not lack jurisdiction to hear a second

section 1538.5 motion. (*Moreno* v. *Superior Court* (1978) 80 Cal.App. 3d 932, 935 [146 Cal.Rptr. 35].) As will become obvious, where the court does not bifurcate or limit the issues to be decided in the suppression hearing, the interests of judicial economy are better served by making express findings on all the interrelated contentions in the event the dispositive or foundational trial court finding is reversed on appeal.

Here, after an extensive hearing, the trial court decided the August 4, 1975, search, the search allegedly underlying every other search in the case, measured up to constitutional standards. We held the court erred in that finding. (See *People* v. *Cella, supra.*) The People assert the trial court necessarily considered the taint of the August 4 search and in denying Cella's motion found the remaining searches and seizures were not the "fruit of the poisonous tree." This record, however, without express findings on this issue cannot support that argument. Logically, the trial court, having once concluded the "keystone" search was valid, never had any reason to consider the taint as to any other search, for there was, in that court's view, no "poison tree" from which the fruit might derive any taint. As noted previously, had the court made findings we would be able to short cut what has become an appellate ping-pong game and rule once and for all on the legality of all the searches and seizures. Nevertheless, whether the court intentionally or inadvertently failed to rule on the remaining merits of the section 1538.5 motion, Cella must receive a full and complete hearing. Cella is thus entitled upon remand to further proceedings to resolve expressly and completely his suppression contentions.[4]

---

[4]In reaching the merits of Cella's argument, we have also rejected the timeliness ground for the court's denial of his motion to suppress. The People successfully argued the timeliness issue by reference to the 10-day notice required by section 1538.5 and the 15-day notice required by the San Diego local rules. Under the circumstances here, however, we conclude there was sufficient, lawful notice given by Cella. Everyone knew Cella wished to proceed further on his motion to suppress. As early as September 27, 1979, Cella told the trial court the case was before the court "to resolve issues that remain on the motion to suppress." The trial date of November 26 was set pursuant to defense counsel's suggestion that a date in November be set in order to permit the parties the opportunity to work out an agreement to use as much of the existing record as possible. That record is nothing more nor less than a record on the motion to suppress evidence. The Supreme Court's order denying further hearing but saying it "was without prejudice to further proceedings, etc." was a further clue that further suppression hearings were in all likelihood to occur. When defense counsel learned in early November that the district attorney had concluded Cella was not entitled to any further proceedings on his motion to suppress evidence, he filed the memorandum of November 8 which expressly provided that it was "to put all interested parties on notice that the defendant does wish to undertake further proceedings pursuant to Penal Code section 1538.5 relative to all searches and all seizures involved in this case other than that of

## II

■■■ ■■■ Cella argues this case involves a clear violation of article IV, subdivision (e), of the Agreement, requiring the dismissal with prejudice of the accusatory pleading.[5]

August 4, 1975." November 8 was 18 days in advance of the date then set for trial. That notice alone, where the motion had been filed previously with the extensive record to which reference has previously been made, was sufficient to comply with the statute and the local rules.

[5]We reject the People's assertion this contention is also not cognizable on appeal following the entry of a plea of guilty.

Casting aside search and seizure issues specifically made reviewable by section 1538.5, subdivision (m), the issues cognizable on an appeal following a guilty plea are strictly limited to those predicated upon "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" precipitating the guilty plea. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 897 [150 Cal.Rptr. 910, 587 P.2d 706]; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028]; *People* v. *Ribero* (1971) 4 Cal.3d 55, 63 [92 Cal.Rptr. 692, 480 P.2d 308]; *People* v. *Lee* (1980) 100 Cal.App.3d 715, 717 [161 Cal.Rptr. 162]; *People* v. *Hayton* (1979) 95 Cal.App.3d 413, 416 [156 Cal.Rptr. 426]; Pen. Code, § 1237.5.) The obtaining of a certificate of probable cause pursuant to section 1237.5 neither renders cognizable those issues waived by a plea of guilty nor affects in any manner the grounds assertable following a guilty plea, but merely sets forth a procedure for screening out frivolous claims and perfecting an appeal from a judgment based upon a guilty plea. (*People* v. *Kaanehe, supra,* 19 Cal.3d at p. 9; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872].)

Although the impact upon a defendant may be substantial, the statutory procedural right to uninterrupted rehabilitative incarceration and to dismissal for violation of that right conferred upon a defendant by article IV, subdivision (e), is neither constitutional nor jurisdictional in a fundamental sense. (*United States* v. *Palmer* (3d Cir. 1978) 574 F.2d 164, 167; *Gray* v. *Benson* (D.Kan. 1978) 458 F.Supp. 1209, 1213.) Jurisdiction in the fundamental sense "is essentially the power or authority conferred upon a court to decide a given type of case." (*Camp* v. *United States* (8th Cir. 1978) 587 F.2d 397, 399.) Indeed, the sanctions of article IV, subdivision (e) ". . . go not to the authority or jurisdiction of the court but rather to the power of the prosecution to proceed against a person charged with a criminal offense." (*Id.,* at p. 399, fn. 4.) Consequently, they pertain to "the legality of the proceedings," for ". . . a formal accusation is an essential condition precedent to a valid prosecution for a criminal offense. If Article IV(e) is violated and the indictment therefore loses its 'force or effect,' the condition precedent is unsatisfied and the prosecution is technically precluded from proceeding further." (*Ibid.*) Accordingly, defendant's contention is cognizable on appeal, as a guilty plea does not constitute a waiver of any violation of the Agreement, properly asserted before the plea.

Our conclusion is in agreement with *People* v. *Reyes* (1979) 98 Cal.App.3d 524, 532 [159 Cal.Rptr. 572], where the court, confronted with the identical procedural situation, explained: "Procedurally appellant did everything required of her to avail herself of the protection of the Interstate Agreement on Detainers. [¶] According to respondent's argument, defendants who claim violation of an Interstate Agreement on Detainers right that is improperly denied by the lower court would be required to fully litigate the charges brought on the Interstate Agreement on Detainers claim in order to

The Agreement[6] was codified in section 1389. It has been enacted by 46 states and the federal government. (*United States* v. *Mauro* (1978) 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834].) Article I sets forth the findings and purposes underlying the Agreement, providing in pertinent part that "'charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.' Accordingly, its purpose is to encourage the expeditious disposition of such charges and to provide cooperative procedures among member States to facilitate such disposition." (*Id.*, at p. 351 [56 L.Ed.2d at p. 341].) The central provisions of the Agreement are embodied within articles III and IV which establish two distinct procedures for activating the Agreement. The former sets forth a procedure by which a prisoner against whom a detainer has been lodged can demand of the warden of the institution in which he is confined a speedy and final disposition of the charges underlying the detainer. The

---

preserve their right to appeal the denial. This anomalous result would be costly and wasteful in terms of both time and money expended to try charges which properly should have been considered under Interstate Agreement on Detainers provisions."

The People next assert Cella waived any rights he had under the Agreement in court on September 27, 1979, by representing to the court no detainer had apparently been lodged at Lompoc, requesting his immediate return to Lompoc, and consenting to release on his own recognizance.

Granted defense counsel enlightened the trial court that apparently the detainer had not been lodged at Lompoc. However, he urged the trial court to do so. Following the trial court's decision to release Cella on his own recognizance, over a defense objection, to be held by federal authorities, defense counsel requested the execution and filing of a waiver of appearance at the pretrial proceedings in order to avoid "transportation back and forth." The court agreed. We reiterate this waiver occurred *after* the court had decided to return Cella to the federal authorities and was prospective only in its application to later proceedings. The defense counsel advised the court *on behalf* of the federal officials at Lompoc of the latters' anxiety for the return of defendant and requested for them that the court make a recommendation to that effect. Once again, defense counsel was speaking after the fact with regard to the return of Cella to Lompoc. Since he was released to federal authorities to be returned anyway, why not expedite the matter in accordance with the wishes of the federal officials? We find no waiver.

The People alternatively claim the Agreement is not applicable to intrastate transfers of custody. However, we find the reasoning in *People* v. *Reyes, supra*, 98 Cal.App.3d at page 530, to be persuasive in holding article IV, subdivision (e), applies equally to transfers, regardless whether interstate or intrastate in character. (See also, *United States* v. *Thompson* (3d Cir. 1977) 562 F.2d 232, cert. den., 436 U.S. 949 [56 L.Ed.2d 793, 98 S.Ct. 2858]; *United States* v. *Sorrell* (E.D.Pa. 1976) 413 F.Supp. 138, affd. (3d Cir. 1977) 562 F.2d 227, cert. den., 436 U.S. 949 [56 L.Ed.2d 793, 98 S.Ct. 2858].)

[6]The Agreement is more appropriately called the "Interjurisdictional Agreement on Detainers" in *In re Blake* (1979) 99 Cal.App.3d 1004, 1011 [160 Cal.Rptr. 781].

latter provides an avenue by which the prosecutor who has filed the detainer against a prisoner in another jurisdicition can secure his presence for disposition of the outstanding charges. The prosecutor need only present to the officials of the jurisdiction incarcerating the prisoner "a written request for temporary custody or availability. . . ." (Art. IV, subd. (a).) However, article IV, subdivision (e), places an important limitation upon the prosecuting authority following its obtaining the prisoner pursuant to article IV. The provision states: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Here, the Agreement was not activated by Cella's request pursuant to section 1381.5 dated July 6, 1979, and mailed to the trial court and the district attorney on July 8, 1979.[7] The request was not directed to the warden as prescribed by the Agreement. Although such informal notice is not prohibited by the Agreement, it, however, does not activate the provisions of article III. (*People* v. *Castoe* (1978) 86 Cal.App.3d 484, 490-491 [150 Cal.Rptr. 237]; see also, *People* v. *Wilson* (1977) 69 Cal. App.3d 631, 636 [138 Cal.Rptr. 259].)

The Agreement was, however, activiated under the provisions of article IV. Pursuant to subdivision (a), a detainer was first lodged against Cella at the federal correctional facility holding him. ■ "'[A] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" (*United States* v. *Mauro, supra,* 436 U.S. at p. 359 [56 L.Ed.2d at p. 346]; *United States* ex rel. *Esola* v. *Groomes* (3d Cir. 1975) 520 F.2d 830, 838.) ■ Although it is in dispute whether the warrant abstract was in fact ever lodged with the federal officials at Lompoc, the district attorney's letter of July 17, 1979, to the warden adequately satisfied the above requirements for a

---

[7]Section 1381.5 provides that if a defendant incarcerated in a federal institution requests trial or sentencing, the district attorney receiving the request must promptly inquire of the warden or head of the federal institution whether and when defendant can be released for trial or sentencing. If the assent of the head of the federal institution is received, then defendant must be brought to trial or sentenced within 90 days of the date of receipt of such assent. The section is silent with regard to what occurs under the circumstances in controversy where no assent is received. It is however clear that the section does not provide any manner for a prosecutor to compel federal correction officials to produce a defendant.

detainer. (Cf. *People* v. *Beamon* (1978) 83 Mich.App. 121 [268 N.W.2d 310, 315-316].) Also, where the prosecuting authorities have filed a detainer with the holding prison officials and then employed a writ of habeas corpus *ad prosequendum*, the writ constitutes the requisite written request for temporary custody, thus triggering the operation of the Agreement. It is undisputed the writ of habeas corpus *ad prosequendum* was applied for and received by the People on September 13, 1979, as Cella was produced pursuant to the order on September 27, 1979.

Where a detainer has been filed before the issuance of the writ of habeas corpus *ad prosequendum*, the return of the defendant to the correctional authorities of the sending jurisdiction before the commencement and completion of his trial would apparently entitle defendant to have his prosecution dismissed under the express language of article IV, subdivision (e). (*In re Blake, supra*, 99 Cal.App.3d 1004, 1020.) Here Cella appeared before the trial court on September 27, 1979. The court held he was in custody, recalled the outstanding bench warrant, and released him on his own recognizance to be held by the federal authorities. He was then immediately returned to Lompoc before any further proceedings upon the matter were held. Hence, the express terms of article IV, subdivision (e), were *technically* violated.

In *People* v. *Reyes, supra*, 98 Cal.App.3d 524, the court faced a similar procedural scenario and held the trial court reversibly erred in failing to dismiss the information pursuant to article IV, subdivision (e). Unlike *Reyes*, which involved a claimed violation of defendant's right to a speedy trial, we are confronted here, (since Cella expressly waived his statutory time for trial), with solely an alleged violation of Cella's statutory right to uninterrupted rehabilitative incarceration. Consequently, *Reyes* is clearly distinguishable.

Relying upon *United States* v. *Chico* (2d Cir. 1977) 558 F.2d 1047, 1049, certiorari denied (1978) 436 U.S. 947 [56 L.Ed.2d 788, 98 S.Ct. 2850], the People urge dismissal of the indictment is not mandated because Cella was never released from federal custody.

In *Chico*, the Second Circuit considered dispositive the brevity of intrusion into the defendant's institutional life. The court held article IV, subdivision (e), did not apply where a prisoner was removed from the state prison for a few hours to be arraigned, plead and be sentenced in the federal court. While on the one hand noting the speedy trial objec-

tives of the Agreement had been fully satisfied in the case, the court on the other hand observed the practice did not interrupt the prisoner's continuous physical presence or rehabilative programs in the sending state and was consonant with the purpose of the Agreement. The court further observed: "It cannot be said that after being removed to face federal charges each was 'returned to the *original* place of imprisonment' (emphasis added), as that term is used in Article IV(e), since it necessarily implies removal to *another* place of imprisonment in the receiving state." (*Id.*, at p. 1049; see also *Gale* v. *United States* (D.C.App. 1978) 391 A.2d 230, 234, fn. 2.)

Because Cella appeared only briefly for arraignment, waived his right to a speedy trial, as well as appearance at the pretrial proceedings, and apparently was never transferred into state custody, *Chico* is inviting case precedent for us to follow. Although it has been followed by other jurisdictions (*Brown* v. *Mitchell* (4th Cir. 1979) 598 F.2d 835, 838; *Hawkins-El* v. *Williams* (D.Md. 1979) 483 F.Supp. 415, 420-421), the entirety of its rationale is less than persuasive. For instance, several other courts have followed the Second Circuit's lead, holding that article IV, subdivision (e), does not apply where the "chain of Federal custody was never broken [citations]." (*People* v. *Lublin* (1978) 62 App.Div.2d 1022 [403 N.Y.S.2d 759, 761]; *People* v. *Squitieri* (1977) 91 Misc.2d 290 [397 N.Y.S.2d 888, 891].) However, the Agreement when read as a whole does not support the proposition article IV, subdivision (e), was ever intended to be triggered by a transfer of custody. For instance, article V, subdivision (a), provides in part: "In the case of a federal prisoner, the appropriate authority in the receiving state shall be entitled to temporary custody as provided by this agreement or to the prisoner's presence in federal custody at the place for trial, whichever custodial arrangement may be approved by the custodian." Consequently, it is rather difficult to conclude that custodial transfers were legislatively "...intended to be the triggering events under Article IV(e) when another portion of the Agreement, Article V(a), includes a built in mechanism under which the federal government can always retain 'custody' of a prisoner requested by another jurisdiction." (*United States* v. *Thompson, supra*, 562 F.2d at p. 240 (dis. opn. of Circuit Judge Garth).)[8]

---

[8]For further statutory analysis in support of this construction, see Circuit Judge Garth's entire discussion within his dissent in *United States* v. *Thompson, supra*, 562 F.2d at pages 240-242.

*Chico* has further been relied upon for the general proposition article IV, subdivision (e), is not applicable where a prisoner is produced pursuant to the Agreement for a brief court appearance and immediately returned to the original place of imprisonment. (See, e.g., *People* v. *Squitieri, supra,* 397 N.Y.S.2d at p. 891.) In the same vein, it has also been held a single appearance in state court for one day does not constitute an "'arrival of the prisoner in the receiving state' within the meaning of article IV (subd. [c])...." (*People* v. *Conway* (1978) 65 App.Div.2d 580 [409 N.Y.S.2d 156].) However, it is apparent to us that brief, but repetitive, visits for several pretrial proceedings can under certain circumstances violate the enumerated purposes of the act.

On the other hand, the proposition that the Agreement and article IV, subdivision (e), provide for no exceptions, contemplating only one "transfer" or "return," regardless of its nature (i.e. arraignment) and duration is untenable. (See *In re Blake, supra,* 99 Cal.App.3d at pp. 1016-1018; see generally, *United States* v. *Sorrell* (3d Cir. 1977) 562 F.2d 227, cert. den. 436 U.S. 949 [56 L.Ed.2d 273, 98 S.Ct. 2858]; *United States* v. *Thompson, supra,* 562 F.2d at pp. 234-235, cert. den. 436 U.S. 949 [98 S.Ct. 2858]; *United States* v. *Sorrell, supra,* 413 F.Supp. 138, 141-142.)

■■ We are persuaded to follow a more pragmatic, less absolute, construction of article IV, subdivision (e), and the Agreement. In so doing, we are mindful of several basic rules of statutory construction including (1) significance should be given if possible to every word, phrase, sentence and part of an act in pursuance of the legislative purpose; (2) words employed within a statute must be construed in context, mindful of the nature and obvious purpose of the underlying statute; and (3) "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ To reiterate, the purposes of the Agreement are "[t]o implement the right to a speedy trial and to minimize the interference with a prisoner's treatment and rehabilitation ...." (*United States* ex rel. *Esola* v. *Groomes, supra,* 520 F.2d at p. 833.) Article IX provides that

"[t]his agreement shall be liberally construed so as to effectuate its purposes." Since Cella waived his right to a speedy trial, our inquiry is directed solely toward the remaining stated purpose. In order to minimize the interference with programs designed to rehabilitate and treat the prisoner, article V, subdivision (e), mandates his return to the sending jurisdiction "[a]t the earliest practicable time consonant with the purposes of this agreement .... " Consequently, the issue before us is narrowed to whether Cella's "transfer" or "return" to Lompoc after the arraignment but before trial was consistent with the cited purpose of the Agreement. We decline to apply article IV, subdivision (e), mechanically in total disregard of the stated purposes of the agreement, since such an application of the provision ". . .would be based upon a construction of the Agreement against, rather than in behalf of, the legitimate interest of [defendant] in receiving rehabilitative education while in federal custody." (*State v. Sassoon* (1978) 240 GA. 745 [242 S.E.2d 121, 123].)

We conclude, although article IV, subdivision (e), was technically violated when Cella was returned to Lompoc, the transfer did not violate his rights under the Agreement because the apparent result of the expedited return was to enable him to participate in presumedly rehabilative programs at Lompoc Correctional Medical Facility. In other words, Cella has never alleged and has thus failed to establish that his right to uninterrupted rehabilitative incarceration was prejudiced in any manner by the return to Lompoc.[9]

Cella contends the express terms of article IV, subdivision (e), are clear and mandatory in nature regarding dismissal of the charges with prejudice without the need of establishing prejudice. However, as already explained, the sanction of article IV, subdivision (e), must be read in light of the entire Agreement and must be applied in a limited manner to promote a defendant's right to uninterrupted rehabilitative incarceration where his right to a speedy trial is not a factor due to waiver or adjudication within the prescribed time limitations. Accordingly, under these circumstances, absent a showing of prejudice, a technical violation of article IV, subdivision (e), does not warrant dismissal of the charges.

---

[9]At oral argument, defense counsel conceded no showing of prejudice was made in the trial court.

*Disposition*

The judgment is reversed and the matter is remanded to the trial court for a complete hearing on the suppression issue in harmony with this opinion.[10]

Staniforth, Acting P. J., and Butler, J.,* concurred.

Petitions for a rehearing were denied February 10, 1981, and the opinion was modified to read as printed above. The petitions of both parties for a hearing by the Supreme Court were denied March 18, 1981.

---

[10]Each petition for rehearing suggests judicial economy can be achieved using the transcript of the earlier section 1538.5 proceedings. Accordingly, we would prefer to remand this case to the judge who originally heard that evidence, the Honorable William C. Speirs, now retired. In light of his retirement, our remand to him is conditioned upon his assignment pursuant to California Constitution, article VI, section 6, and his willingness to so act. If Judge Speirs is not available, we remand for rehearing on the basis of the existing record of the motion to suppress in accordance with defendant's agreement expressed in his response to the People's petition for rehearing, subject, however, to the right of each party to present such additional admissible evidence as either party and the court may deem proper.

*Assigned by the Chairperson of the Judicial Council.