[No. B140352. Second Dist., Div. Five. Apr. 19, 2001.]

THE PEOPLE, Plaintiff and Respondent; v.
MICHAEL JAMES LAVIN, Defendant and Appellant.

## COUNSEL

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mary Sanchez and J. Andrew Niedrick, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WILLHITE, J.***—Defendant Michael James Lavin appeals from a judgment of conviction entered after a no contest plea. He obtained a certificate of probable cause from the trial court to appeal the denial of his motion to dismiss the charges against him for an alleged failure to comply with the Interstate Agreement on Detainers, codified by Penal Code section 1389.[1] We affirm.

### PROCEDURAL HISTORY

An information charged defendant with five counts of robbery (§ 211), one count of assault with intent to commit rape (§ 220), and one count of

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further section references are to the Penal Code.

second degree commercial burglary (§ 459). The information alleged that defendant personally used a firearm in the robbery and assault charges (§ 12022.53, subd. (b)). It also alleged that he had suffered a serious felony conviction under the "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), that he had served a prior prison term (§ 667.5, subd. (b)), and, as to four charged robberies and the assault charge, that he had suffered a serious felony conviction (§ 667, subd. (a)(1)). Defendant initially pled not guilty and denied the allegations. However, after the trial court denied his motion to dismiss all charges under section 1389, he entered a negotiated disposition. He pled no contest to one robbery count, admitted the firearm use allegation, and admitted the serious felony conviction under the Three Strikes law. The court sentenced him to a term of 14 years in state prison. The court dismissed the remaining charges and allegations. The court issued a certificate of probable cause allowing defendant to appeal the denial of his motion to dismiss under section 1389. (See § 1237.5; Cal. Rules of Court, rule 31(d).)

## PROCEEDINGS ON THE MOTION TO DISMISS[2]

### A. *The Motion*

█ The Interstate Agreement on Detainers (IAD), codified by section 1389, is "an agreement between California, 47 other states, and the federal government. It facilitates the resolution of detainers, based on untried indictments, informations or complaints in one jurisdiction, lodged against persons who have 'entered upon a term of imprisonment' in another jurisdiction." (*People v. Rhoden* (1989) 216 Cal.App.3d 1242, 1249 [265 Cal.Rptr. 355]; see *People v. Cella* (1981) 114 Cal.App.3d 905, 916-917 [170 Cal.Rptr. 915]; *People v. Castoe* (1978) 86 Cal.App.3d 484, 487 [150 Cal.Rptr. 237].) Under the IAD, " '[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " (*United States v. Mauro* (1978) 436 U.S. 340, 359 [98 S.Ct. 1834, 1846, 56 L.Ed.2d 329]; see *People v. Garner* (1990) 224 Cal.App.3d 1363, 1369 [274 Cal.Rptr. 298].)

As relevant to the present case, "[t]he IAD establishes a procedure by which a prisoner against whom a detainer has been lodged may demand trial within 180 days of a written request for final disposition properly delivered to the prosecutor and appropriate court of the prosecutor's jurisdiction. (§ 1389, art. III, subd. (a).) The failure of the state receiving the request to act in compliance with the IAD and the 180-day limit results in dismissal of

---

[2]Because the evidence of the charged crimes is not relevant to this appeal, we omit a summary of it.

the pending criminal charges with prejudice. (§ 1389, art. V, subd. (c); see, e.g., *Marshall v. Superior Court* (1986) 183 Cal.App.3d 662 [228 Cal.Rptr. 364].)" (*People v. Brooks* (1987) 189 Cal.App.3d 866, 872 [234 Cal.Rptr. 573].)

On January 20, 2000, defendant filed a motion to dismiss the charges against him under section 1389. The basis of the motion was his contention that while a sentenced prisoner in Oregon, he had been informed that a detainer from Los Angeles County had been lodged against him. He thereafter substantially complied with the requirement of section 1389, article III, subdivisions (a) and (b), by sending to the Van Nuys branch of the Los Angeles Municipal Court a handwritten demand for disposition of untried charges, which was received on May 28, 1999. The motion sought dismissal of the current charges because more then 180 days had expired since receipt of the demand.

The motion was supported in part by a declaration from defense counsel. On information and belief, counsel stated that in May 1999, Los Angeles County placed a detainer on defendant while he was a sentenced prisoner in the custody of the Clackamas County Jail, part of the Oregon Department of Corrections. According to counsel, defendant was informed that since the Clackamas facility was only an inmate classification center, it did not handle requests under the IAD, and that defendant would have to do everything himself. Defendant received no information as to where to send his notice, except that the case was pending in the Van Nuys Municipal Court. Defendant immediately requested legal forms from the Clackamas authorities, and caused to be filed a demand for disposition under the IAD. More than 180 days had passed since he had made his demand.

Attached as an exhibit to the motion was a copy of defendant's request for forms from the Clackamas County Jail, filed on May 12, 1999. He had requested "4 of these forms '[Interstate] Demand for Disposition of all Untried Warrants, Complaints, Informations and Indictments." The reply to the request from a sergeant at the jail, dated the next day, was printed across the form. It stated in relevant part that only copies of criminal law forms found in the law library would be provided. The sergeant asked defendant to provide the number of the form he needed, which could be found in the criminal law forms book. Only one copy would be provided. Defendant would have to handwrite additional copies.

Also attached to the motion as an exhibit was a copy of defendant's handwritten "Demand for Disposition and Speedy Trial on Any and All Untried Warrants, Complaints, Informations and/or Indictments," subscribed

and sworn by defendant on May 24, 1999. The document had been sent by certified mail to the Los Angeles Municipal Court in Van Nuys, and received on May 28, 1999. In his demand, defendant identified himself by name, by his Social Security number, and by his Oregon prisoner number. He also listed his current address at the Eastern Oregon Correctional Institution. He stated that he had repeatedly tried to obtain legal forms but was unsuccessful, and so made his own form. He wrote that he was "making his demand for 'disposition and speedy trial' to this County of Los Angeles through its Honorable Court as is his Constitutional Right."

Another exhibit attached to the motion was a copy of a letter dated June 5, 1999, in which defendant wrote to the head deputy district attorney in Van Nuys. In the letter he asked, among other things, to be notified of the actual charges pending against him before he would sign a "Mandatory Waiver of Extradition." His prison counselor in Oregon had told him to sign the form, but he had balked. He also stated his willingness to discuss a settlement of the California charges. He referred to his earlier demand for disposition, but stated that he had received no notification of any resolution.

### B. *The Hearing*

The trial court held a hearing on defendant's motion to dismiss. At the hearing, defendant offered no testimony. However, the court engaged in a dialogue with counsel and defendant concerning certain matters the court believed relevant to the motion. The following is the substance of the various representations by the parties and defendant.

The parties agreed that defendant had been sentenced in Oregon on or about April 29, 1999. He was initially housed at the Clackamas County Jail, which is the equivalent of an inmate reception center, and is part of the Oregon prison system. On May 19, 1999, defendant was transferred to permanent housing at the Eastern Oregon Correctional Institution. Defendant apparently possessed a copy of the detainer filed against him. His counsel presented it to the court with the concurrence of the prosecutor.

Defendant himself made certain unsworn oral representations to the court. Piecing them together, his version of events appears to be as follows. When defendant was initially at the Clackamas County Jail, he was taken to a room where a sergeant informed him that he had a detainer from California. Defendant replied that those charges had been dismissed. The sergeant reiterated that there was a detainer, and that he had to so inform defendant because defendant had the right to a speedy trial. The sergeant said that defendant would have to handle the matter through the law library. Defendant did not then receive a copy of the detainer. However, when informing

him of the detainer, the sergeant was apparently reading from the actual detainer on file at the institution.

Defendant made a request for forms from another sergeant who was in charge of the law library at the Clackamas facility. This sergeant told him that they would not provide forms, and that he would have to handwrite one. Therefore, defendant handwrote his own demand for disposition. After composing the demand, but before sending it, defendant was transferred from Clackamas County Jail to the Eastern Oregon facility.

Defendant recognized that "[t]he inmate always initiates the process as far as these detainers go." Therefore, he went to the law library at the Eastern Oregon facility, and presented the librarian with his handwritten demand. The librarian informed him that it should be sent certified mail through the institution. Defendant himself obtained the address of the Van Nuys court from a book in the law library. He gave the librarian his demand in an envelope, and she apparently caused it to be mailed. Defendant did not request an IAD form from the warden of the institution.

After the demand was sent, and before defendant sent his June 5 letter to the district attorney, defendant met with his counselor at the prison, and was told there was a mandatory waiver of extradition he had to sign. Defendant refused to sign it without being informed of the nature of the California charges pending against him.

According to discussions of the parties and the court, it was not until September 24, 1999, that defendant signed an agreement to be extradited to California.

After lengthy argument, the trial court denied the motion to dismiss. The court found that the 180-day period of section 1389 was not triggered by defendant's demand for disposition. Further, the court reasoned that since the Clackamas County Jail was only a brief holding facility, it did not fall within the requirements of the IAD. Finally, the court ruled that even if the IAD applied to the Clackamas facility, the 180-day period was tolled from June 5 to September 24, 1999, the period during which defendant contested his extradition to California. Therefore, the time period had not expired.

## DISCUSSION

We conclude that the trial court properly denied defendant's motion to dismiss. Defendant's handwritten demand and his letter to the district attorney were insufficient to invoke the provisions of section 1389, article III.

■ For the IAD to apply, three conditions must exist: "(1) there is an untried indictment, information or complaint pending in a California court; (2) the defendant named in said untried indictment, information or complaint is a prisoner serving time in a foreign jurisdiction; and (3) the district attorney lodges a detainer based on such untried indictment, information or complaint against the prisoner in such foreign jurisdiction." (*People v. Castoe, supra,* 86 Cal.App.3d at pp. 489-490, italics omitted.) If these three conditions occur, then "[t]he prisoner may initiate final disposition under article 3 [of section 1389] by making a written request to the warden who must forward the request to the appropriate authorities in the other jurisdiction along with a certificate delineating the prisoner's sentence, the time already served and the time remaining to be served. (Art. 3, subds. (a), (b).) If the prisoner requests final disposition of the charges, he must be brought to trial within 180 days after the appropriate court and prosecutor have received formal notification. (Art. 3, subd. (a).)" (*People v. Garner, supra,* 224 Cal.App.3d at p. 1367.)

In order to take advantage of the sanction of dismissal, the prisoner must comply with the procedural requirements of the IAD. (*People v. Garner, supra,* 224 Cal.App.3d at p. 1371, and cases there cited; *People v. Rhoden, supra,* 216 Cal.App.3d 1242, 1252-1253.) The relevant requirements are discussed in *People v. Rhoden, supra,* 216 Cal.App.3d at page 1252: " 'Article III, subdivision (a) provides that the 180-day period is to run from the date the prisoner "shall have caused to be delivered" a written notice and request for final disposition to the district attorney and the court. Article III, subdivision (b) clearly states that the prisoner shall give or send the notice and request *to the warden, commissioner of corrections or other official having custody of the prisoner.*' [Citation.] [¶] The warden then prepares a certificate 'stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.' (§ 1389, art. III, subd. (a).)" (Original italics.)

■ Turning to the merits of defendant's appeal, we first dismiss respondent's contention that defendant failed to prove that a detainer had been lodged by Los Angeles authorities. In the trial court, the prosecutor did not contest—and, in fact, appeared to concede—that his office had lodged a detainer against defendant. Indeed, with his concurrence, a copy of the detainer was presented to the court. We find that defendant adequately showed the existence of a detainer.

However, defendant's showing in the trial court was fatally deficient in other respects. First, his handwritten demand for disposition received by the

municipal court on May 28, 1999, did not substantially comply with the requirements of section 1389, article III. It was sent directly to the court, rather than to the warden of the institution in which defendant was housed. It failed to contain any of the information required in the statutory certificate. A copy was not sent to the district attorney. The demand for disposition was clearly insufficient to invoke the time period of section 1389. (*People v. Garner, supra,* 224 Cal.App.3d at pp. 1370-1371 [requests not sent through warden and sent directly to court]; *People v. Rhoden, supra,* 216 Cal.App.3d at pp. 1252-1253 [request sent directly to district attorney, not through warden and without requisite statutory information]; see *People v. Cella, supra,* 114 Cal.App.3d 905, 917 [IAD has no provision for informal notice of demand for disposition]; *People v. Castoe, supra,* 86 Cal.App.3d at pp. 490-491 [accord].)

Similarly, defendant's letter to the district attorney was inadequate to start the 180-day period. It was sent directly to the prosecutor, not the warden. With the possible exception of the terms of defendant's Oregon sentence, it contained none of the required certificate information. No copy was sent to the court. Indeed, it did not even purport to be a demand for disposition under the IAD. Although it referred to defendant's prior demand for trial, the letter itself did not demand a trial within 180 days. Rather, it indicated defendant's interest in perhaps negotiating a settlement, and his reluctance to waive extradition without knowing the precise charges.

On appeal, defendant argues that his two documents should be deemed substantial compliance because the Oregon prison authorities did not provide him with the correct forms and advice, and he did all he could reasonably be expected to do. We disagree.

Initially, we question whether the record made by defendant in the lower court is adequate to review this claim. Defendant did not testify, and did not file a declaration under penalty of perjury. His attorney simply filed a declaration on information and belief, apparently relating matters told him by defendant. Other than defendant's unsworn representations, and his attorney's repeating some of these representations in his declaration based on information and belief, there is no evidence that Oregon prison authorities were in any way uncooperative. We find it problematic, indeed, to base a motion to dismiss on alleged failures by Oregon prison officials, when those claims are not substantiated by properly presented sworn statements, either by declaration or live testimony. At one point in defendant's running dialogue with the court, the district attorney below stated that "[t]he People will certainly not concede any of his allegations that he is making for the record."

Regardless of how the trial court viewed defendant's remarks, they provide an insubstantial basis to support defendant's motion at an adversary hearing.

In any event, even if we accept defendant's showing in the lower court at face value, we are compelled to find that the motion to dismiss was properly denied. Defendant's failure to comply with section 1389 cannot be blamed on the conduct of Oregon prison officials.

Under section 1389, article III, subdivision (c), "[t]he warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." Accepting defendant's representations, it appears that Oregon prison authorities complied with this duty. At the Clackamas County Jail, defendant was informed that he had a detainer from California, and that he had a right to demand a speedy trial. Defendant, however, insisted that the charges against him had been dismissed. Nonetheless, the sergeant at the facility apparently read the terms of the detainer to him.

In his motion and oral representations, defendant claimed that Oregon officials refused to provide him with appropriate forms to make a demand under the IAD, and that he was told that he had to handwrite his own demand form. However, the reply of the sergeant in charge of the Clackamas law library, as printed on defendant's written request for forms, did *not* refuse to provide an appropriate form. Rather, the sergeant informed defendant that only copies of forms in the library books would be provided, and he simply asked defendant to specify the number of the particular form he wanted. Moreover, the reply did *not* state that defendant had to handwrite his own form, but rather that "we provide only one form and you are required to hand copy additional ones needed." Defendant made no showing that he attempted to locate the proper form number for an IAD demand and was unsuccessful.

In the trial court, defendant stated that Oregon authorities told him that it was up to him to initiate proceedings under the IAD. Such advice complies with the statute. It is the prisoner who must deliver the notice and request for final disposition to the warden (§ 1389, art. III, subd. (b)), not the warden who must solicit the document from the prisoner.

Defendant faults the prison law librarian for giving him bad advice; apparently it was she who suggested that he send his demand by certified

mail to the municipal court. However, we do not believe that the efficacy of IAD procedures depends on a prison law librarian's detailed knowledge of IAD requirements. Defendant certainly had access to a copy of the statute in the prison law library. It is he who bears the burden of making a proper demand for disposition. At the very least, he could be expected to know that he must forward his demand to the warden, as clearly spelled out in the statute. Contrary to his arguments on appeal, he did not do all he could reasonably be expected to do.

The cases on which defendant relies for his claim of substantial compliance are distinguishable. In *U.S. v. Zfaty* (S.D.N.Y. 1999) 44 F.Supp.2d 589, prison authorities did not advise the prisoner of his rights under the IAD. (*Id.* at pp. 589, 590-591.) That failure, combined with the failure to provide the prisoner with a standard form promulgated by the United States Marshals Service for initiating an IAD demand, led the court to find substantial compliance, despite procedural irregularities in the prisoner's requests for trial. Similarly, in *Schofs v. Warden, FCI, Lexington* (E.D.Ky. 1981) 509 F.Supp. 78, state authorities refused to provide requested forms to the prisoner. Because of this failure, the court found substantial compliance in a demand for trial sent to the prosecuting authorities, who acknowledged the demand but claimed it was deficient.

Here, by contrast, Oregon prison authorities did inform defendant of the detainer and his right to demand a speedy trial. They did not refuse to provide standard forms. Further, neither they nor the district attorney's office in any way interfered with defendant's ability to comply with the specific procedural requirements of the statue.

Finally, as a practical matter, it is clear that defendant himself did not truly expect that either of his documents would have the full effect of a proper IAD demand. Under section 1389, article III, subdivision (e), a proper request for final disposition sent to the warden is deemed a waiver of extradition to the charging state, and a consent to be produced in any court as required to effectuate the purposes of the statute. Here, it is apparent that defendant did *not* want to be extradited to California, and apparently did not conceive that either of his documents would have that effect. Indeed, his letter to the head district attorney in Van Nuys demanded certain information before he would sign a waiver of extradition. We find it difficult to reconcile his claim on appeal that he must be deemed to have complied with the IAD and to have started the 180-day time period running, with his apparent desire not to be brought to California to face the charges to which his demand for disposition related.

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied May 8, 2001, and appellant's petition for review by the Supreme Court was denied August 8, 2001.