[Crim. No. 3108. Fifth Dist. Nov. 17, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD DAVID CASTOE, Defendant and Appellant.

COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, Laurence S. Smith, Mark L. Christiansen and Richard G. Fathy, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ACCURSO, J.*—

STATEMENT OF THE CASE

On February 12, 1976, an information was filed charging the appellant Howard David Castoe with two separate violations of Penal Code section

*Assigned by the Chairperson of the Judicial Council.

476a (issuing checks with intent to defraud). Appellant pled not guilty and was present at the commencement of his jury trial on April 8, 1976, but voluntarily absented himself from the proceedings on the second day. The trial continued in Castoe's absence with the jury returning a verdict of guilty as charged. A bench warrant was issued for appellant's arrest.

On May 7, 1976, the court granted a motion by appellant's trial counsel for an indefinite continuance in sentencing pending his apprehension. Appellant was subsequently incarcerated in Texas for an offense committed in that state. While incarcerated he submitted a written request dated July 20, 1976, to the Fresno County District Attorney and the Fresno County Superior Court in which he asked to be returned to California for sentencing. The district attorney refused the request. After Castoe's release in Texas, he returned to California where he was arrested on an outstanding bench warrant. On January 27, 1977, appellant filed a motion to dismiss, the denial of which is the basis for this appeal. Appellant sought dismissal on the grounds that the district attorney's refusal to return him to California for sentencing was a violation of the Interstate Agreement on Detainers (Pen. Code, § 1389 et seq.).

On February 8, 1977, the trial court entered a judgment of conviction for violation of Penal Code section 476a and appellant was sentenced to state prison for the term prescribed by law. This appeal followed.

DISCUSSION

The Interstate Agreement on Detainers (Pen. Code, § 1389) to which both California and Texas are parties, provides a mechanism whereby a prisoner in one jurisdiction can be transferred, upon request, to another jurisdiction for disposition of charges pending against him. The purpose of the agreement is to promote the expeditious and orderly disposition of charges outstanding against a prisoner and to require prompt determination of the proper status of detainers based on untried indictments, informations, or complaints. Such untried charges and detainers produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. (Pen. Code, § 1389, art. I.) A prisoner entitled to the protection of the agreement who complies with the procedure set forth in article III, subdivision (a), must be transported to the jurisdiction where the charges are pending and tried on those charges within the 180-day period of limitations, or the charges must be dismissed and any detainer based thereon ceases to have effect. (Art. V, subd. (c).)

In the court below and on appeal the appellant raised the question of whether Penal Code section 1389 applies to a defendant found guilty of a crime in California, who is incarcerated in a foreign jurisdiction prior to sentencing on the California offense and who requests a transfer to this state for sentencing. We must also decide whether the section applies where no detainer has been lodged. Both questions must be answered in the negative.

The appellant states that the purpose of the agreement is to permit a prisoner incarcerated in one state to know the final disposition of any other state's charges against him in order to maximize the prisoner's potential for rehabilitation through the elimination of uncertainty. He argues that final disposition, in this context, includes sentencing.

Nowhere in the statute is there a reference to sentencing. The agreement repeatedly refers to "untried indictments, informations or complaints." Article I of section 1389 states the policy as follows: "it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." This same article also states: "that proceedings with reference to such charges and detainers . . . cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

Appellant fails to understand that the word "disposition" in article I refers to "disposition of such charges" and that the charges referred to are "charges outstanding against a prisoner" based on untried indictments, informations or complaints. The detainers referred to throughout the whole statute are "detainers based on untried indictments, informations or complaints." Appellant's argument that the words "final disposition" as used in section 1389 must include sentencing is incorrect because those words are to be read in the context of section 1389 which refers repeatedly to untried indictments, informations or complaints. Article III, subdivision (a), is very clear that there must be a pending *untried* indictment, information or complaint on the basis of which a *detainer* has been lodged against the prisoner before the wheels of the statute can commence to turn.

Further evidence that the Legislature did not intend to require that a prisoner be returned for sentencing alone appears from a

comparison of section 1389 with sections 1381 and 1381.5.[1] Section 1381 provides in pertinent part: "Whenever a defendant has been convicted, in any court of this state of the commission of a felony or misdemeanor and has been sentenced to and has entered upon a term of imprisonment in a state prison . . . and at the time of the entry upon such term of imprisonment . . . there is pending, in any court of this state, any other indictment, information, complaint, or *any criminal proceeding wherein the defendant remains to be sentenced,* the district attorney of the county in which such matters are pending shall bring the same defendant to trial *or for sentencing* within 90 days. . . ." (Italics added.) Section 1381.5 provides in pertinent part: "Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution, and . . . there is pending in any court of this state any criminal indictment, information, complaint, or any criminal proceeding *wherein the defendant remains to be sentenced* the district attorney of the county in which such matters are pending . . . shall promptly inquire of the warden or other head of the federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial or for sentencing." (Italics added.) The fact that sections 1381 and 1381.5 expressly refer to sentencing while section 1389 fails to do so, clearly implies, under the doctrine of *inclusio unius est exclusio alterius,* that the Legislature did not intend to require that prisoners in foreign jurisdictions be returned only for sentencing.

Section 1389 contemplates that the defendant will be returned to California for *trial* on *untried* indictments, informations, and complaints and if the defendant is found guilty the section contemplates that the defendant will remain for sentencing. In this sense section 1389 contemplates sentencing. This section *does not* contemplate that a defendant who is tried and found guilty who escapes to a foreign jurisdiction will have the benefit of being brought back to California, at the state's expense, to be sentenced and then returned to the foreign jurisdiction at California's expense.

■ There is an additional reason why section 1389 does not apply here. The section does not become effective until three things occur: (1) there is an untried indictment, information or complaint pending in a California court; (2) the defendant named in said untried indictment, information or complaint is a prisoner serving time in a foreign

---

[1]Sections 1381 and 1381.5 were both amended in 1971 to add the sentencing requirements.

jurisdiction; and (3) the district attorney *lodges a detainer* based on such untried indictment, information or complaint against the prisoner in such foreign jurisdiction. If any one of these three conditions is absent, then the section does not apply. The record in this case does not indicate that a detainer was lodged against appellant. Section 1389 does not impose a duty on the district attorney to file a detainer or present a written request for temporary custody or availability. The lodging of a detainer or presenting a request is discretionary with the district attorney.

■ Even if the section did apply to this case, appellant has not substantially complied with its procedural requirements. Article III, subdivision (a), provides that the 180-day period is to run from the date the prisoner "shall have caused to be delivered" a written notice and request for final disposition to the district attorney and the court. Article III, subdivision (b), clearly states that the prisoner shall give or send the notice and request *to the warden, commissioner of corrections or other official having custody of the prisoner.* Even if it is assumed that a detainer was lodged in this case, article III, subdivision (b), does not permit a prisoner's self-help effort to start the running of the 180-day period. The prisoner must give or send the notice and request to the proper official in the prison where he is incarcerated. The official then is to promptly forward that notice and request along with the certificate to the district attorney and the court by registered or certified mail, return receipt requested.

In *People* v. *Wilson* (1977) 69 Cal.App.3d 631 [138 Cal.Rptr. 259], the court stated at page 636: "The Agreement contains no provision by which the prisoner can informally notify the appropriate prosecuting official of the state lodging the detainer of his request for a trial. This is understandable in view of the purpose of the Agreement to provide an orderly disposition of detainers. That goal is achieved in part by the obligation placed on the warden of the prison in the sending state to forward, along with the prisoner's request for final disposition, the information set out in article III, subdivision (a) regarding the prisoner's release date. This information is often necessary before the prosecuting officials can make an intelligent decision as to whether the person should be returned for trial. [Citation.]"

Article III, subdivision (b), requires the defendant to give the notice and request to the warden. There is nothing in the statute that would prevent the defendant from sending a copy of the notice and request to the district attorney and the court. It should be clear, however, that the copy

sent to the district attorney and the court in this case is not sufficient by itself to put section 1389 into effect. All the other factors discussed above must be present.

We hold that section 1389 does not apply to sentencing and further hold that a detainer must be filed before a prisoner can utilize this statute to bring about his trial or a dismissal of the untried charges.

■ The trial court's ruling in denying the motion to dismiss was proper because in fact the appellant was before the court within the 180 days. The appellant's request was dated July 20, 1976. The postmark on the envelope was July 22, 1976. Giving appellant the benefit of instantaneous notice (i.e., July 20, 1976), he was before the court on the 177th day from the date of his request.

Appellant, accompanied by counsel, appeared before Judge Leonard I. Meyers of the Fresno County Superior Court on January 12, 1977. At appellant's request the case was referred to the probation office for a supplemental report and recommendation and appellant was given leave to file whatever motions he cared to file no later than January 20, 1977. The case was then continued to January 27, 1977, at 2 p.m. for pronouncement of sentence and hearing on the motions that were to be made in the interim. Thus, the delay beyond 180 days was in response to appellant's request.

The fact that appellant was not sentenced within 180 days is not fatal because the extension of time was not only for the probation report but also because of appellant's request (treated as a motion) to continue for sentencing and the filing of motions.

The judgment is affirmed.

Brown, (G. A.), P. J., and Hopper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1979.