Filed 8/29/13  P. v. Fort CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAMAREA ANTHONY FORT,<br><br>        Defendant and Appellant. | A135126<br><br>(Solano County<br>  Super. Ct. No. FCR258669) |

Defendant Damarea Anthony Fort appeals from the trial court's denial of his motion to dismiss pursuant to Penal Code section 1389, California's codification of the Interstate Agreement on Detainers Act (hereinafter, IAD).  Defendant challenges the trial court's decision, contending he complied with the IAD in a manner sufficient to trigger invocation of its 180-day mandatory dismissal rule by mailing a handwritten letter from his Nevada prison to the District Attorney in Solano County requesting final disposition of charges pending against him in California.  For reasons set forth below, we affirm the trial court's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 2, 2008, the Solano County District Attorney (SCDA) filed a criminal complaint against defendant charging him with two felonies, to wit, first degree residential burglary (Pen. Code, § 459)[1] and grand theft firearm (§ 487, subd. (d)(2)), for

---

[1]        Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

a daytime burglary in Solano County on April 8, 2008.  Before defendant was served with the arrest warrant on these charges, authorities in Clark County, Nevada arrested and convicted him on different criminal charges for a felony robbery and two misdemeanor drug convictions that occurred in Nevada.  Defendant was sentenced to between three and 10 years for the Nevada crimes and incarcerated in the High Desert State Prison in Indian Springs, Nevada.

In April 2010, defendant sent a handwritten letter to the SCDA while incarcerated in Nevada.  In this letter, defendant requested favorable resolution of a pending misdemeanor charge against him arising out of an altercation he was involved with at a high school.  Specifically, defendant's letter stated as follows:

> To whom it may concern: [¶] My name is [defendant] . . . [date of birth] 12/18/89, and I'm currently serving a 3-10 year sentence here in High Desert State Prison, in Indian Springs, NV.

> Around September of '08, I was issued an extradition warrant from Solano County, (you guys) in Fairfield, CA. I've just recently found out that the warrant is only a bench warrant, for a failure to appear for a fight I got into while in high school, (Armijo High).

> I doubt that you guys will actually come all the way to Nevada for something that small, but that's not my issue. Thing is, because I have this warrant I can't go to camp, and the reason camp is important is because it will take away a lot of my time, so when I get out in 3 years I'll only have about a year on parole to do.

> I'm asking you to either dismiss the warrant, (being that it is only a misdemeanor) or to run it concurrent with this sentence I'm serving now. I'm really trying to better myself as an inmate, and High Desert doesn't offer the proper means to do that, but with this warrant I can't leave, so please help me to take care of this issue.  Thank you and I appreciate your help.

2

On April 19, 2010, the SCDA sent defendant a responsive letter informing him, among other things, that there was an additional outstanding warrant against him in California for the two felonies charged in this matter.  The SCDA also notified defendant of its intent to authorize his extradition to California to face both the felony charges for the daytime burglary and the misdemeanor charges for the high school fight.

On November 18, 2010, almost seven months later, the Warrant Coordinator for the Nevada Department of Corrections responded in writing to correspondence from the SCDA advising:  "This [letter] will acknowledge receipt of your DETAINER against the above referenced subject. Interstate Agreement on Detainer initiated."  The Warrant Coordinator also provided the SCDA certification of the following information regarding defendant's inmate status: defendant's name, Nevada case number, California case number, current sentence and current offense, total days earned and served, projected parole eligibility, consecutive terms to serve in Nevada, post date, and projected discharge.  Finally, the letter noted: "Interstate Agreement on Detainers Initiated."

On September 26, 2011, Nevada paroled defendant and extradited him to California for arraignment in this matter.  On November 4, 2011, defendant filed a motion to dismiss pursuant to article III of the IAD, the subject matter of this appeal, on the ground that the SCDA failed to bring him to trial within 180 days of its receipt of the Nevada Warrant Coordinator's November 18, 2010 letter informing it that the "IAD [had been] initiated."  The district attorney opposed the motion.

On November 18, 2011, after a contested hearing, the trial court denied defendant's motion to dismiss, reasoning as follows:

> Well, I am intending to deny it and let me tell you why. First of all, in the defendant's initial request he never even mentions this case, and he never even mentions the request for trial either.  What he wants is the misdemeanor charge that he thinks is pending, either dismissed or to receive a concurrent sentence on it so that he can go to this fire camp. That's what this letter is all about that he wrote in [April] 2010.

3

The document that was received from Nevada was simply an acknowledgement to the placement of the detainer on the defendant. It had nothing to do with the defendant's request to have his misdemeanor charge dismissed. There is no mention of this felony case by the defendant in his communications, and the cases I am relying on [] include *People versus Wilson*, . . . *People versus Lavin*, . . . *People versus Cella*, . . . and a federal case, *Alabama versus Bozeman* . . . .

These latter cases indicate rather forcefully that the procedures for making a demand are detailed, and the process must include a demand on the prosecutor and warden verification. They also contain language that the applications must generally conform to these requirements.

So that's where we are at this time. I did read, or at least I am aware of this *Zetsche* case, . . . which indicates where a prisoner has substantially complied with the procedural requirements, the Court should allow -- or should grant the defendant's request, but I don't think there has been substantial compliance. There has been no compliance, so that's where I am.

Following the court's ruling, defendant accepted a plea agreement pursuant to which he was sentenced to two years in state prison with credit for 260 days time served for first degree residential burglary, and the remaining felony theft charge was dismissed. The court also agreed to issue defendant a certificate of probable cause pursuant to section 1237.5 to enable him to appeal the denial of his motion to dismiss. Accordingly, on March 27, 2012, appellant filed a timely notice of appeal.[2]

---

[2] The denial of a defendant's motion to dismiss a criminal complaint under the IAD is generally a question of law reviewed *de novo,* with the underlying factual findings reviewed for clear error. (*U.S. v. Hall* (9th Cir. 1992) 974 F.2d 1201, 1204; *Israni v. Superior Court* (2001) 88 Cal.App.4th 621, 636.)

4

## DISCUSSION

The IAD, codified in section 1389, is "an agreement between California, 47 other states, and the federal government. It facilitates the resolution of detainers, based on untried indictments, informations or complaints in one jurisdiction, lodged against persons who have 'entered upon a term of imprisonment' in another jurisdiction."[3] (*People v. Lavin* (2001) 88 Cal.App.4th 609, 612.)  Specifically, the IAD "provides a mechanism whereby a prisoner in one jurisdiction can be transferred, upon request, to another jurisdiction for disposition of charges pending against him." (*People v. Castoe* (1978) 86 Cal.App.3d 484, 487.)  "Numerous courts have recognized the [IAD] was adopted to remedy abuses which occurred in the prior system which resulted in hardships to prisoners against whom detainers had been lodged, including the prisoner being automatically barred from special prison work programs, athletic programs and privileges, from incarceration in minimum security facilities; being denied the possibility of concurrent sentencing even for crimes resulting from a single episode or closely related in time; being ineligible for parole or commutation of sentence; and being prejudiced from delay in having the charges tried. As a result prisoners against whom detainers had been lodged had little incentive to perform well in prison." (*Marshall v. Superior Court* (1986) 183 Cal.App.3d 662, 676.)

"To implement this policy, the [IAD] establishes two alternate and distinct mechanisms for dealing with detainers based on outstanding charges, each containing a different statutory time limitation. (See *Marshall v. Superior Court* (1986) 183 Cal.App.3d 662, 664 [228 Cal.Rptr. 364]; *People v. Cella* [1981] 114 Cal.App.3d [905] at pp. 916-917; see also *People v. Castoe* (1978) 86 Cal.App.3d 484, 489-490 [150 Cal.Rptr. 237].)  Article III sets out the terms by which a prisoner may request final disposition of outstanding charges connected with a detainer. It provides that whenever a person has entered upon a term of imprisonment, and whenever during the continuance of

---

[3]     Under the IAD, "[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." (*People v. Lavin, supra,* 88 Cal.App.4th at p. 612.)

5

that imprisonment there are pending in another jurisdiction any untried charges, that person shall be entitled to prompt notice of his right to request final disposition of the charges. Subdivision (d) of article III provides that the prisoner is entitled, *upon the appropriate request for final disposition*, to have all untried charges underlying the detainer tried within 180 days." (*People v. Zetsche* (1987) 188 Cal.App.3d 917, 922 [italics added].)  To be deemed appropriate, however, the prisoner's request for final disposition must meet certain minimal requirements. Specifically, the prisoner must give or send a written notice and request for final disposition "to the warden, commissioner of corrections or other official having custody of [the prisoner]." (Art. III, subd. (a), (b).) The official must then, in turn, promptly forward by registered or certified mail to the district attorney and the court of the receiving state the prisoner's written notice and request, along with a certificate "stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."[4] (*Ibid.*)  "[T]he 180-day period [under article III] is to run from the date the prisoner 'shall have caused to be delivered' a written notice and request for final disposition to the district attorney and the court." (*People v. Castoe*, *supra*, 86 Cal.App.3d at p. 490.)

Article IV, on the other hand, "provides a mechanism by which the *prosecutor* who has filed a detainer against a prisoner in another jurisdiction can secure his presence for disposition of the outstanding charges. The prosecutor need only present to the officials of the jurisdiction incarcerating the prisoner 'a written request for temporary custody or availability . . . .' (Art. IV, subd. (a).)  Subdivision (c) of article IV further

---

[4]     "Once the inmate has made this request the Agreement places the burden of compliance with the procedural requirements upon the party states and their agents. When the warden or other prison official receives the inmates request for final disposition he is duty bound to '*promptly forward* it together with the certificate to the appropriate prosecuting official . . . .' (Art. III, subd. (b); italics added.) 'In the performance of these duties, the Warden has no discretion.' . . . [Citation.]" (*People v. Wilson* (1977) 69 Cal.App.3d 631, 636-637.)

6

provides in part: 'In respect to any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, . . .' Subdivision (e) of article IV provides in part: 'If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . , such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.' " (*People v. Zetsche, supra,* 188 Cal.App.3d at p. 923 [italics added].)

"Thus, article III proceedings are initiated by a request from the prisoner, while article IV proceedings are commenced by a request by the prosecutor." (*People v. Zetsche, supra,* 188 Cal.App.3d at p. 923.)

Here, defendant seeks dismissal of the felony complaint in this matter pursuant to article III of the IAD. We, however, agree with the prosecution that defendant did not comply with the mandatory procedures set forth under the identified article. Specifically, his written request for final disposition of some of the charges against him was not directed to the warden or other Nevada prison official as required under article III. Rather, it was directed to the SCDA.[5] Moreover, defendant's request was not accompanied by the requisite certification from the warden providing the statutorily-designated information regarding his inmate status. "Although such informal notice [to the district attorney in the receiving state] is not prohibited by the [IAD], it, however, does not activate the provisions of article III." (*People* v. *Cella* (1981) 114 Cal.App.3d

---

[5] We agree with defendant that, contrary to the trial court's reasoning in denying his motion, the fact that defendant mentioned in his letter to the SCDA only an outstanding warrant for misdemeanor charges against him, and not the warrant for the felony charges underlying this appeal, is not fatal to his IAD challenge. (See Art. III, subd. (d) ["Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed."].) However, error in a trial court's reasoning does not require reversal of an otherwise proper ruling. (E.g., *Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 710.)

7

905, 917. See also *People v. Castoe, supra*, 86 Cal.App.3d at pp. 490-491 [while "nothing in the [IAD] would prevent the defendant from sending a copy of the notice and request to the district attorney and the court . . . [i]t should be clear . . . the copy sent to the district attorney and the court . . . is not sufficient by itself to put section 1389 into effect"]; *People* v. *Rhoden* (1989) 216 Cal.App.3d 1242, 1252-1253 [affirming denial of motion to dismiss where, "[a]lthough a proper detainer was later lodged, [defendant] never complied with the requirement that he submit his request to the warden"].)

As defendant correctly notes, the missing certification of his inmate status was included in the November 18, 2010 letter from the Warrant Coordinator for the Nevada Department of Corrections to the SCDA. Defendant suggests, based upon the Nevada Department of Corrections' letter and accompanying certification, that his own failure to submit written notice and request for final disposition to the warden or other custodial official pursuant to article III, subdivision (a), is somehow cured or rendered irrelevant. Defendant also contends we should infer from this letter and accompanying certification that he must have submitted the requisite notice and request to the Nevada warden or other custodial official because, otherwise, the Nevada Department of Corrections would not have been prompted to send its own letter to California officials. We reject defendant's suggestions for several reasons. First, there is nothing in the record (aside from mere speculation) to support an inference that defendant sent the requisite notice and request to any official in Nevada. Second, defendant's argument ignores the alternative set of procedures under article IV of the IAD, set forth above, by which the prosecutor, rather than the prisoner, may initiate a transfer under the IAD. As the November 18, 2010 letter states, the Nevada Department of Corrections was in receipt of "the [SCDA's] DETAINER against [defendant]." This evidence suggests, contrary to defendant's argument, that the SCDA, not defendant, may have initiated the procedures for transfer under the IAD, rendering the 180-day time period for mandatory dismissal

8

under article III inapplicable.[6]  (Compare *People* v. *Cella, supra,* 114 Cal.App.3d at pp. 916-917 [under article IV, prosecuting authorities may trigger operation of the IAD by filing a detainer and written request for temporary custody of the prisoner with the holding prison officials].)

Thus, under these circumstances, we decline to disturb the trial court's decision to deny defendant's motion to dismiss based upon his failure to meet " '[his] sole obligation under the Agreement . . . to advise the warden of his request for final disposition of the charges on which the detainer is based. [Citations.]" (*People v. Wilson* (1977) 69 Cal.App.3d 631, 636.)  Given defendant's failure in this regard, we agree with the trial court that the 180-day time period for mandatory dismissal under article III was never triggered.  As the case law makes clear, the IAD "contains no provision by which the prisoner can informally notify the appropriate prosecuting official of the state lodging the detainer of his request for a trial. This is understandable in view of the purpose of the Agreement to provide an orderly disposition of detainers. That goal is achieved in part by the obligation placed on the warden of the prison in the sending state to forward, along with the prisoner's request for final disposition, the information set out in article III, subdivision (a) regarding the prisoner's release date. This information is often necessary before the prosecuting officials can make an intelligent decision as to whether the person should be returned for trial. [Citation.] [¶] . . . Furthermore the official nature of the certificate puts the district attorney's office on notice that the prisoner is proceeding under the Agreement. This procedure reduces the necessity of the district attorney's office screening all manner of communications to determine the validity of their request for an immediate trial. [Citation.]" (*People v. Wilson, supra,* 69 Cal.App.3d at p. 636.)

Finally, defendant raises an "estoppel" argument as an alternative ground for reversing the trial court's decision.  Specifically, defendant contends that the prosecution should be estopped from challenging his noncompliance with article III based upon the SCDA's April 2010 letter to him, written in response to his earlier letter to the SCDA, in

---

[6]     There is no issue on appeal regarding the SCDA's compliance with the IAD and, as such, we have no reason to consider it other than in passing.

which the SCDA informed him it "would not dismiss either [your felony or misdemeanor case] and have authorized your extradition back to California." According to defendant, because the SCDA's April 2010 letter "in essence announced to him that any further demand would be surplusage," the People now have "no right retrospectively to ask that the court penalize [him] for any failing [sic] to correct 'defects' in his initiating letter." Defendant cites no authority for his estoppel argument and in any event, we find it lacks merit. As such, based upon the well-established case law set forth above, we stand by our conclusion that defendant failed to comply with the mandatory requirements of article III, requiring denial of his motion to dismiss. (E.g., *People v. Castoe, supra*, 86 Cal.App.3d at p. 490; *People* v. *Rhoden, supra,* 216 Cal.App.3d at pp. 1252-1253.) The trial court's ruling thus stands.

## DISPOSITION

The trial court's order is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

10