Filed 3/13/15  P. v. Dempsey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070000 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F03541) |
| v. | |
| CHARLES WAYNE DEMPSEY, JR., | |
| Defendant and Appellant. | |

Defendant Charles Wayne Dempsey, Jr., has committed sexual crimes against young women and girls in Texas and California.  The facts of those many crimes, however, are not relevant to the issues involving extradition and the Interstate Agreement on Detainers (IAD) presented by this appeal of his California convictions.  Unfortunately, many of the facts relevant to our resolution of defendant's speedy trial claim (Pen. Code, § 1389) are not in the record.  Defendant contends he is entitled to a dismissal of his California convictions because he did not receive a speedy trial after he signed a waiver of extradition and the Texas court dismissed his fugitive complaint, nor was he given timely notice of his right to request a final disposition of the California complaint.  Despite the paltry record, we disagree and affirm the judgment.

1

# I

# LEGAL LANDSCAPE

Prosecutors have two different vehicles for bringing fugitives back to California to stand trial for crimes committed in the state—extradition and detainers. The record is clear the Sacramento County District Attorney initiated extradition proceedings in Texas. What is not clear is whether the district attorney ever issued a detainer pursuant to the IAD. There are significant differences between the two.

Both Texas and California have enacted the Uniform Criminal Extradition Act (UCEA). (Tex. Code Crim. Proc., arts. 51.01-51.13; Pen. Code, §§ 1547-1558.) Under the UCEA, a fugitive may be arrested in an asylum state once that state becomes aware of an out-of-state warrant that has been issued against a person located within its jurisdiction. The governor of the asylum state issues a warrant providing for the rendition of the fugitive to the demanding state. (Tex. Code Crim. Proc., arts. 51.01-51.13; Pen. Code, §§ 1547-1558.) At any time during the process, a fugitive may waive his right to extradition proceedings and the issuance of the governor's warrant and return to the demanding state voluntarily. (Tex. Code Crim. Proc., arts. 51.01-51.13; Pen. Code, §§ 1547-1558.)

The IAD "to which both California and Texas are parties, provides a mechanism whereby a prisoner in one jurisdiction can be transferred, upon request, to another jurisdiction for disposition of charges pending against him. The purpose of the agreement is to promote the expeditious and orderly disposition of charges outstanding against a prisoner and to require prompt determination of the proper status of detainers based on untried indictments, informations, or complaints. Such untried charges and detainers produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." (*People v. Castoe* (1978) 86 Cal.App.3d 484, 487.)

A formal detainer must be filed by the state before an inmate may invoke the provisions of the IAD. (*People v. Garner* (1990) 224 Cal.App.3d 1363, 1368-1369.) A

detainer is a notification to a warden that an inmate serving a sentence in that institution is wanted to face pending criminal charges in another jurisdiction. (*United States v. Mauro* (1978) 436 U.S. 340, 359 [56 L.Ed.2d 329, 346].) "Under the IAD, once a state has lodged a detainer based on an uncharged indictment, information or complaint against a prisoner in another jurisdiction, the authorities must notify the prisoner of the detainer and give the prisoner an opportunity to request a final disposition of the pending charges. ([Pen. Code, § 1389, a]rt. [III], subd. (c).) Then, either the prisoner or the prosecutor may initiate procedures leading to transfer and disposition of the charges. ([Pen. Code, § 1389, a]rts. [III], [IV].)" (*Garner*, at p. 1367.)

The IAD has two speedy trial provisions, depending on whether the prisoner or the prosecutor initiates the procedures leading to transfer and disposition of the charges. If the prisoner requests final disposition of the charges, he must be brought to trial within 180 days of when the prosecutor is notified. (Pen. Code, § 1389, art. III, subd. (a).) If the prosecutor initiates proceedings to obtain transfer of the prisoner, he must be brought to trial within 120 days of his arrival in the receiving state. (Pen. Code, § 1389, art. IV, subd. (c).) A prisoner is entitled to dismissal of the charges with prejudice if he is not brought to trial within the applicable time limits. (Pen. Code, § 1389, arts. III, subd. (d), IV, subd. (e).) "In order to take advantage of the sanction of dismissal, the prisoner must comply with the procedural requirements of the IAD." (*People v. Lavin* (2001) 88 Cal.App.4th 609, 616.)

## II

## PROCEDURAL FACTS

The success of defendant's appeal hinges entirely on the applicability of the IAD. Yet the record contains no detainer, no request by defendant for a final disposition of the charges, and no documentation that the prosecutor ever initiated proceedings to obtain his transfer. The only relevant facts available in the record before us are as follows.

On April 19, 2005, Sacramento County charged defendant with nine counts of kidnapping and sexual assault against two victims, with various enhancements. Three days later, defendant was arrested at home in Fort Worth, Texas, and prosecuted for four rapes he committed in Texas in 1997 and 1999. On July 27, 2006, he was convicted of raping a 16-year-old girl and sentenced to a determinate term of 60 years in prison. On August 17, 2006, after pleading guilty to aggravated sexual assault of a girl under the age of 14, he was convicted of that crime and sentenced to a term of 12 years.

On September 20, 2006, an assistant district attorney in Texas filed a criminal complaint stating that he had good reason to believe defendant fled the State of California on or about September 16, 2006, "and is a fugitive from justice."[1] An "in custody fugitive warrant issued" the same day the criminal complaint was filed, and defendant waived the "issuance and service of extradition warrant, as well as any and all extradition proceedings which may be required by law . . . ." Defendant appeared on the September 20, 2006, extradition warrant on September 20, September 25, October 5, and November 9 of 2006; January 4, February 1, and March 1 of 2007; and finally on February 21 of 2008, at which time the complaint was "dismissed on motion of the state." As stated on the form request for dismissal, the reason the State of Texas requested the dismissal was "Defendant released to agents of demanding state." This solitary phrase is the linchpin of defendant's entire appeal.

In April 2011 defendant requested that final disposition be made of the pending kidnap, rape, oral copulation, and sodomy charges against him. The form request includes the following language: "I also agree that this request shall be deemed to be my

_____

[1] We cannot determine from an examination of the record before us how defendant could have fled from California on September 16, 2006, when he was convicted in Texas on July 27, 2006, of the commission of rape and on August 17, 2006, of the commission of aggravated sexual assault.

4

waiver of extradition to your state for any proceeding contemplated hereby, and a waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the IAD and a further consent to be returned to the institution in which I now am confined."

The Sacramento County District Attorney received defendant's written request for final disposition on May 12, 2011. In the district attorney's response to defendant's motion to dismiss, the People wrote that "[a]t no time prior to May 12, 2011, did the People receive any written notice from the defendant or from the Texas Department of Criminal Justice for final disposition of the Sacramento County charges." Trial commenced on October 13, 2011. There is no dispute that the trial commenced within 180 days of defendant's 2011 request for final disposition of the pending charges.

Defendant moved to dismiss the charges for violation of his right to a speedy trial under the IAD. (Pen. Code, § 1389.) He argues that his right to a speedy trial was triggered in September 2008 under article IV of the IAD. The only evidence he offers is the notation on the Texas record dismissing the fugitive complaint that states, "Defendant released to agents of demanding state."

During argument at the hearing on the motion to dismiss, the prosecutor did not challenge defendant's assumption that a detainer had been lodged. Indeed, the prosecutor conceded: "In regards to the release to the demanding state, first of all, I'm not submitting on the issue whether or not there was a detainer issued, because from the review of the documents from Tarrant County that [defense counsel] provided, the logical reasonable conclusion is that there was a detainer that was issued."

The trial court denied the motion to dismiss. The court explained, "In this case, in looking at all the evidence that's been presented to me, the arguments of counsel, the court finds that the defendant was not previously brought to California for prior detainer

5

proceedings.  It appears based on the evidence that has been presented to me that California never received notice from Texas with respect to Mr. Dempsey's waiver of his extradition proceedings or the notification where the State of Texas appears to indicate defendant released to agents of demanding state.  At least I have seen no return receipt requested in the documents disclosed to [defense counsel] to indicate that California ever got notice of that."

As to defendant's claim that he was entitled to dismissal because he was not given proper notice of his right under the IAD, the court ultimately ruled, "[D]ismissal is not a remedy for failure of the Texas warden to inform Mr. Dempsey of his speedy trial rights, and I cite of course Penal Code section 1389, which does not provide for dismissal for lack of notice."  After citing federal cases, the court concluded, "Specifically these cases hold that dismissal is specified as a remedy for certain IAD violations, but the speedy trial notice provision is not among them."  Defendant appeals.

### III

### DISCUSSION

As described above, either an inmate or the prosecutor can initiate transfer proceedings after a detainer is filed pursuant to the IAD.  At issue here is what occurred in 2006 and 2008, not 2011 when defendant clearly requested a final disposition and the Sacramento County District Attorney brought him to Sacramento for trial.  Defendant's claim is twofold.  He contends that the prosecutor failed to bring him to trial within 120 days of his arrival in California in 2008 pursuant to article IV of the IAD.  But he also asserts that his waiver of extradition in 2006 substantially complied with the IAD and constituted a formal request for final disposition of the pending charges under article III thereof.  We examine both arguments.

The reason identified in the Texas form for dismissing the fugitive complaint was "Defendant released to agents of demanding state."  From that mere notation, defendant asks us to draw a series of inferences.  First, we are to assume that the prosecutor filed a

6

detainer, although there is no detainer in the record. Second, we are to assume defendant was released pursuant to the IAD on a detainer and not through interstate extradition of a fugitive completely unrelated to the IAD, although the only documentation including the fugitive complaint and defendant's waiver of extradition refers only to extradition and not to a detainer or the IAD. Third, we are to assume, contrary to the trial court's factual finding, that the Texas authorities notified the Sacramento County District Attorney that defendant's fugitive complaint was dismissed, the Texas authorities released defendant to California agents, and defendant arrived in California. Defendant insists those assumptions triggered the running of the 120-day deadline for bringing him to trial in 2008. We disagree.

There is simply no evidence to support the first assumption that the Sacramento County District Attorney filed a detainer. On appeal, the Attorney General points out that a detainer must be lodged before an inmate can invoke the IAD and insists the prosecutor wrongly assumed, in the absence of any evidence, that a detainer had been filed. Defendant admonishes us not to consider what he characterizes as a "factual issue" for the first time on appeal. We agree with the Attorney General that the record does not contain any evidence to support the allegation that a detainer was filed, but we need not make any factual finding whether it was filed or not. Defendant's speedy trial claim fails for at least two other reasons.

The meager evidence in the record suggests nothing more than interstate extradition. An "in custody fugitive warrant" was issued and executed on September 20, 2006. There is nothing on the criminal docket, motion to dismiss, or warrant that mentions a detainer. Rather, defendant is characterized as a fugitive and the Texas authorities filed a fugitive complaint. On same day, defendant signed a "Waiver of Extradition Proceedings." While he does not make reference to any pending detainer, he does expressly "waive the issuance and service of extradition warrant, as well as any and all extradition proceedings which may be required by law and now voluntarily agree to

7

remain in custody of the Sheriff of Tarrant County, Texas, and to return to the said State of California in custody of any officer or agent of said State who may appear to return me to said State."

That is not to say, as defendant argues in reply, that there may not have been parallel proceedings under the IAD and as an interstate extradition. We agree with defendant there do not appear to be any legal barriers to simultaneous proceedings. The only problem in this case is there is no evidence that the prosecution proceeded under the IAD.

Defendant does not offer any evidence, even a declaration, that he actually was transferred to and arrived in the State of California. Instead, he relies on an opaque notation on the motion to dismiss form and an evidentiary presumption to fill in the blanks. Whether or not he actually arrived in California is dispositive because his arrival in the state is the only possible trigger for the commencement of the speedy trial deadline pursuant to article IV of the IAD. His argument is as follows. The motion to dismiss the fugitive complaint was granted because he "was 'released to agents of demanding state.' " Applying the presumption that an official duty has been regularly performed, he asks us to presume that California's agent delivered him to California, and therefore he arrived in the state. He does not suggest when he arrived, when the 120-day period began to run, or when his right to a speedy trial expired. In his view, it must have expired long before 2011, when he made his formal request for a final disposition.

That is quite an evidentiary and logical stretch. Nevertheless, defendant argues that the paucity of evidence should be construed against the Sacramento County District Attorney "since the relevant records are clearly within their control." Defendant fails to acknowledge that the absence of a record of a detainer may mean there was no detainer issued and that defendant never arrived in California from Texas. He insists that we draw some nefarious inference from the lack of a record when the lack of record may indeed suggest that he never left Texas. That is precisely the factual finding made by the trial

8

court.  And that fact is never addressed in his declaration, a fact "clearly within [his] control," for surely he could attest to whether or not he actually arrived in California.

But defendant accuses the Attorney General of distorting the plain meaning of the language.  Although the form reads "Defendant released to agents of demanding state," the Attorney General argues the notation meant that defendant was available to a California agent, not that he was actually delivered to one.  We reject the Attorney General's invitation to rewrite the language, even if from all the circumstances it is an imminently reasonable inference.  But we support the Attorney General's ultimate conclusion.  It is not that the language does not mean what it says, but rather, that there is no evidence defendant actually arrived in California.  We must reject defendant's notion that invocation of an Evidence Code section 664 presumption trumps the lack of evidence.

Defendant's second try at dismissal under the IAD is weaker yet.  He suggests that the waiver of extradition actually constituted a request for final disposition under the logic of *U.S. v. Zfaty* (1999) 44 F.Supp.2d 588, wherein the federal court accepted less than compliant letters from the defendant as substantial compliance with the requirements of the IAD.  But a form waiver of extradition bears no resemblance to the two letters Mr. Zfaty sent to the federal court, copies of which were sent to the federal prosecutor, expressly demanding a prompt arraignment.  There is nothing in the waiver of extradition requesting disposition of defendant's case in any form, and there is no evidence that the Sacramento County District Attorney or the superior court ever received notice of the waiver.  Thus, unlike the handcrafted letters by Mr. Zfaty sent to the appropriate entity, the waiver of extradition executed in Texas did not substantially comply with the IAD's directive to deliver to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction an inmate's request for final disposition to be made of the indictment, information, or complaint.  (Pen. Code, § 1389, art. III, subd. (a).)  There is no evidence of any request for a final disposition, and the waiver of extradition cannot,

9

under any reasonable construction, be read to constitute the requisite request. *Zfaty* provides no support for defendant's assertion to the contrary.

Alternatively, defendant claims he is entitled to dismissal because the Texas authorities never advised him of his right to request a final disposition as allowed under the IAD. The notice provision of the IAD requires: "The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." (Pen. Code, § 1389, art. III, subd. (c).)

It is true that the trial court backed away from its initial finding that the waiver of extradition contained an express acknowledgment that defendant had been advised of his rights. This is but another example of how the two proceedings—one under interstate extradition and the other pursuant to the IAD—are separate and distinct. We agree with the trial court that defendant's waiver of extradition does not contain a waiver of his right to notice under the IAD. Ignoring for the moment the threshold issues as to whether a detainer was ever filed or whether the prosecution ever sought defendant's return under the IAD, the dispositive question is not whether defendant waived his right to notice, but whether the IAD requires dismissal of the charges for the failure to give notice to an inmate. Persuasive authority holds that it does not. (*U.S. v. Robinson* (2006) 455 F.3d 602, 606 (*Robinson*); *U.S. v. Lualemaga* (2002) 280 F.3d 1260, 1264 (*Lualemaga*); *U.S. v. Walker* (2001) 255 F.3d 540, 542 (*Walker*).)

Finally, defendant urges us to remand the case to the trial court for a determination whether he was prejudiced by the Texas authorities' failure to provide him notice of his speedy trial rights under the IAD. Such a remand would be a futile act because, as cited above, the IAD does not provide dismissal as a remedy for the failure to give defendant notice even if the court found prejudice. (*Robinson*, *supra*, 455 F.3d at p. 606; *Lualemaga*, *supra*, 280 F.3d at p. 1264; *Walker*, *supra*, 255 F.3d at p. 542.)

10

Defendant, however, argues that *People v. Zetsche* (1987) 188 Cal.App.3d 917 suggests otherwise.  The court in *Zetsche* did indeed conduct a prejudice analysis, having accepted the proposition that automatic dismissal is not required as a remedy for a violation of Penal Code section 1389, article III, subdivision (c).  (*Zetsche*, at p. 926.) The court found no prejudice had occurred since the defendant had entered a guilty plea before expiration of the section 1389, article III, subdivision (a) 180-day time limit. (*Zetsche*, at p. 926.)  But we disagree with any implied suggestion that a prejudice analysis is required.

## DISPOSITION

The judgment is affirmed.


                                                          RAYE                , P. J.


We concur:



            BLEASE            , J.



            HULL              , J.


11